FILED
Western District of Washington
at Seattle

JUN 13 2019

MARK L. HATCHER, CLERK
OF THE BANKRUPTCY COURT

19-01060

To Whom It May Concern:

Thank you for the opportunity to tell you about the nightmare my children and I have experienced. This is my formal written response to the complaint.

The home in this proceeding has been in my family for three generations. Imagine all the memories and joy of living in a home that your father was raised in and that you get to raise your children in. This is the only home my five children have known. It has provided each of us with a much needed sense of stability and safe haven while going through a traumatic divorce and adjustment time while getting back on our feet and moving forward. For these reasons and many more, our home is dear to each of us and we would like to stay here, if possible.

I started paying the mortgage myself in October 2012 when my husband at the time, Noah Keables, left us. I was eventually awarded sole ownership of the house after mediation on January 22, 2014. (Exhibit A). Per the mediation agreement, Noah and his dissolution attorney, Jason Gaber, were to prepare final orders, including a Quit Claim Deed and Excise Tax Affidavit for the transfer of the house to my sole ownership. They failed to comply. Instead, Noah filed for bankruptcy on March 7th, 2014 without my knowledge. I was notified on April 14th, 2014 that Noah included the house in his bankruptcy (Exhibit B) and that the trustee intended to sell it when a real estate agent hired by the trustee to sell the house contacted me three days later (Exhibit C). I was mortified and heartbroken.

I fully intended to keep the house and continued to make payments even after I discovered that the house was tied up in bankruptcy. My hope was that the nightmare would end and that common sense would prevail. I was wrong. Despite our best efforts, the trustee would not release the house from the proceedings (Exhibit D & E). I stopped making payments on the house only after my attorney advised me to stop until we had a better understanding of the situation. Noah and his dissolution attorney refused to address the housing issue at all, citing it was all my responsibility because I "owned" the house.

I attempted to remedy the situation via Noah and then via our dissolution attorneys (Exhibit F & G), as well as Washington Federal and lastly by getting a bankruptcy attorney of my own, Taryn Darling Hill. Overall, I was informed at that time that I did not have any options to remedy the situation and had lost our home. For the next 3 years my children and I had to deal with the stress and fear of the uncertainty of what was happening to our home and when we would be getting our 30-day notice to pack up and move elsewhere. In May of 2017, I was informed that an offer was pending on the house at which time Washington Federal stepped in. Washington Federal assisted me with getting the Quit Claim Deed and Excise Tax Affidavit for the transfer of the house to my sole ownership, as well as a modified loan so that my children and I could continue to stay in our home. Almost two years later, I was in the process of selling our home when the bankruptcy trustee and brokers contacted me and my listing agent, Carol Hinman. We were informed that I did not have the legal right to sell my house and if I did, both my listing agent and I could be sued by Lumin Brokers and/or Noah (Exhibit H). The MLS listing for my house was removed and I am now being forced into foreclosing on my house since I cannot sell it.

Pamela McDaniel